**In re Robert A. GRIBBEN, Debtor.**

No. C–2–86–1269.

United States District Court,
S.D. Ohio, E.D.

March 24, 1988.

---

Larry J. McClatchey & Ann M. O'Connell, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for debtor-appellant, Robert A. Gribben.

John F. Winkler & Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio, for appellee, Bayanihan Investors.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

The debtor-appellant, Robert A. Gribben, was formerly employed by the Robert A. Gribben Construction Company ("the company"), of which he was a shareholder, director, and officer. In 1965, the company established a retirement plan ("the plan") for the benefit of its salaried employees. The debtor served as the administrator of the plan and as one of its trustees. The plan met all the requirements of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. and had tax-exempt status under Internal Revenue Code §§ 401 and 501.

The debtor retired from the company in June, 1983. At that time, he elected to receive his benefits in the form of monthly payments over a ten-year period. These payments were based on the debtor's proportionate share of the plan's assets, which were revalued annually. Upon his retirement, the debtor ceased to have any role in the management of the company and the administration of the plan.

Subsequent to his retirement, debtor filed an individual bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. In his schedule of assets, debtor listed his interest in the plan but claimed it as exempt. The trustee filed an objection and the Bankruptcy Court held a hearing on June 4, 1986. That court rejected debtor's arguments that his interest in the plan was either excluded from the bankruptcy estate or was exempt. This case is now before this Court on debtor's appeal from the Bankruptcy Court's decision.

On appellate review, findings of fact by a Bankruptcy Court may not be set aside unless they are clearly erroneous. Bankruptcy Rule 8013. Conclusions of law, however, are freely reviewable on appeal. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984); *In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980).

Appellant's first contention is that the Bankruptcy Court erred in concluding that his interest in the pension fund is an asset of the bankruptcy estate. In general, the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). An exception to this general rule, however, is that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

Appellant contends that his interest in the pension fund falls within the exception. Appellant notes that 29 U.S.C. § 1056(d)(1) provides that "[e]ach pension plan shall provide that benefits provided

under the plan may not be assigned or alienated," and that his company's plan complied with this provision. Therefore, appellant argues, the plan contains a restriction on transfer that is enforceable under nonbankruptcy law.

However, most courts which have considered such an argument have rejected it. In *In re Goff*, 706 F.2d 574 (5th Cir.1983), the court examined the legislative history of § 541(c)(2) and concluded that Congress had intended "applicable nonbankruptcy law" to refer only to state law concerning spendthrift trusts. The court noted that "Congress made reference to federal law and pension benefits when such a charcterization was intended; yet it did not do so in Section 541(c)(2)." *Id.* at 586. Thus, the court concluded that "[t]he only reasonable inference to draw is that Congress intended that pensions provided for by federal law be insulated from bankruptcy only to the extent recognized in Section 522." *Id.*

Other cases in which courts have held that § 541(c)(2) applied only to spendthrift trusts protected by state law include *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir. 1984); *In re Faulkner*, 79 B.R. 362 (Bankr. E.D.Tenn.1987); and *In re Dagnall*, 78 B.R. 531 (Bankr.C.D.Ill.1987). But see *In re Ralstin*, 61 B.R. 502 (Bankr.D.Kan. 1986); and *In re Pruitt*, 30 B.R. 330 (Bankr.D.Colo.1983). There is no Sixth Circuit case which has addressed this issue. The appellant, however, relies on *General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980) for the proposition that allowing creditors to reach interests in pension funds is contrary to the purpose of ERISA.

In *Buha*, the court held that pension plan benefits were not subject to state garnishment procedures. A cornerstone of the *Buha* opinion was the provision of ERISA which expressly preempts state law affecting pensions. 29 U.S.C. § 1144(a). Other federal laws, however, are not superseded by ERISA. 29 U.S.C. § 1144(d) provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the

United States...." In view of this provision, this Court cannot conclude that the anti-alienation provision of ERISA was intended to supersede the sweeping definition of the bankruptcy estate contained in 11 U.S.C. § 541(a)(1).

Appellant next argues that the anti-alienation provision of his pension plan is enforceable against creditors under Ohio law. However, the Ohio Supreme Court has held that "the provisions of a trust agreement cannot prevent the continuing and enforceable rights of a beneficiary to obtain some direct tangible benefit thereunder from being applied toward satisfaction of a judgment against such beneficiary." *Sherrow v. Brookover*, 174 Ohio St. 310, 189 N.E.2d 90 (1963). Appellant attempts to circumvent this holding by noting that the *Sherrow* court held that statutory authority would be necessary to protect trusts from the reach of creditors. The statutory authority, appellant contends, is supplied by the anti-alienation provision of ERISA.

Such reasoning, however, is circular. In enacting 11 U.S.C. § 541(c)(2), Congress intended to preserve the protections granted by some states to spendthrift trusts. See *Goff*, 706 F.2d at 582. To find such state protections in federal law would be to turn § 541(c)(2) on its head. Any authority to exclude property from the bankruptcy estate must be found in state law.

Appellant also maintains that his interest in the retirement fund would be protected from creditors under the holding in *Martin v. Martin*, 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978). In that case, the Ohio Supreme Court held that a trustee with absolute discretion to distribute income or principal could not be compelled to make payments to the beneficiary's former wife, who had received an award of alimony. In the case at bar, however, the plan administrator has no discretion over the payments to be made to the appellant. The administrator must pay to each beneficiary his or her *pro rata* share of the trust's assets. Thus, *Martin* does not control the instant case.

For the foregoing reasons, the Court concludes that the Bankruptcy Court did not

err in determining that the appellant's interest in a pension fund was included in the bankruptcy estate.

■ The appellant also argues that his retirement benefits are exempt under 11 U.S.C. § 522(b)(2)(A). That section provides that "[a]n individual debtor may exempt from property of the estate ... any property that is exempt under federal law...." That section does not specify the types of property which are exempt under federal law. However, the House and Senate reports on § 522(b)(2)(A) do contain a list of exempt property. They include foreign service retirement and disability benefits, social security payments, injury or death compensation payments from war risk hazards, wages of fishermen, seamen, and apprentices, civil service retirement benefits, longshoremen and harbor workers' death and disability benefits, Railroad Retirement Act annuities and pensions, veterans' benefits, pensions paid to Medal of Honor winners, and federal homestead lands on debts contracted before issuance of the patent. S.Rep. No. 989, 45th Cong., 2d Sess. 75, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5861; H.R.Rep. No. 595, 95th Cong., 2d Sess. 360, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6316.

While the legislative reports do not state that the above list is exclusive, the failure to include ERISA-qualified plans is highly indicative of congressional intent that they are not exempt under § 522(b)(2)(A). As the *Goff* court noted, "[g]iven the extensive and general reach of ERISA-qualified plans, it is highly improbable that Congress intended their inclusion without mention in the Section 522(b)(2)(a) exemption in the midst of a listing of significantly less comprehensive and less well known statutes." 706 F.2d at 585. *See also In re Lichstrahl*, 750 F.2d at 1491.

Additionally, the types of property listed in the legislative reports differ considerably from the property governed by ERISA. The enumerated exemptions are either federally-created pensions and benefits or are related to industries traditionally protected by the federal government. On the other hand, the pensions covered by ERISA are privately established and privately funded. *See In re Graham*, 726 F.2d at 1274. The Court thus concludes that Congress did not intend to include ERISA-qualified plans within § 522(b)(2)(A).

Appellant also contends that his retirement benefits are exempt under Florida law, which is applicable to the issue of exemptions since appellant was a resident of Florida at the time he filed his Chapter 7 petition. 11 U.S.C. § 522(b)(2)(A). Appellant relies on Fla.Stat. § 222.14, which provides:

> The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

That statute does not define the term "annuity contract," nor does any reported decision of a Florida court. A statutory definition of "annuity" does appear in Fla. Stat. § 238.01(16), which states: " 'Annuity' shall mean annual payments for life derived as provided in this chapter from the accumulated contributions of the member." A bankruptcy court in Florida has defined "annuity" as:

> [A] yearly payment of a certain sum of money granted to another in fee for life or for years, and chargeable only on the person of the grantor; or more briefly, as an agreement to pay a specified sum annually during the life of the anunitant. In its broader sense it designates a fixed sum, granted or bequeathed, payable periodically, at aliquot parts of a year, at stated intervals, and not necessarily annually.

*In re Gefen*, 35 B.R. 368 (Bankr.S.D.Fla. 1984), *quoting In re Talbert*, 15 B.R. 536 (Bankr.W.D.La.1981).

■ The appellant's retirement payments do not fall within the above definition of annuity. The appellant is not entitled to receive a fixed sum at stated intervals. Rather, his payments are based on the fair market value of assets in the plan, which are revalued annually. Additionally, the company had absolute discretion over the amount of its contributions to the plan. Therefore, the Court concludes that appellant's interest in the pension plan is not an annuity that is except from attachment under Fla.Stat. § 222.14.

The appellant also maintains that dire consequences will ensue if his retirement benefits are made subject to his creditors' claims in the bankruptcy proceeding. Appellant first suggests that the retirement plan will lose its tax-exempt status because Internal Revenue Code § 401(a)(13) requires that a plan contain an anti-alienation provision. However, to the extent that Congress intended to include retirement benefits in the bankruptcy estate, it necessarily amended § 401(a)(13). *See Regan v. Ross*, 691 F.2d 81, 87 (2d Cir.1982). Appellant also argues that the plan administrator will be subject to liability for breach of his fiduciary duty. However, appellant has not cited any cases in which this has happened. Moreover, it is highly unlikely that the administrator could be held liable for complying with a court order.

For the foregoing reasons, the Court concludes that the Bankruptcy Court did not err in determining that the debtor's interest in the retirement plan is included in the bankruptcy estate and is not exempt from the estate. Accordingly, the judgment of the Bankruptcy Court is AFFIRMED.

It is so ORDERED.