McCord, Weaver & Troutman, P.C., John F. Weaver, Knoxville, Tenn., for trustee.

Edward S. Christenbury, General Counsel, Justin M. Schwamm, Sr., Harriet A. Cooper, Thomas C. Doolan, Knoxville, Tenn., for Tennessee Valley Authority Retirement System.

Richard M. Mayer, Knoxville, Tenn., for debtors.

**In re Ernest G. BOWMAN, Linda J. Bowman, Debtors.**

**Bankruptcy No. 3–89–01559.**

United States Bankruptcy Court, E.D. Tennessee.

Jan. 17, 1990.

MEMORANDUM ON TRUSTEE'S OBJECTION TO DEBTORS' AMENDMENT TO EXEMPTIONS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it an objection filed by John F. Weaver, Trustee, to an "Amendment To Exemptions" filed August 22, 1989, by the debtors.[1] By their amendment, the debtors claim an exemption pursuant to Tenn.Code Ann. § 26–2–104 (Supp. 1989), quoted *infra*, in retirement benefits due Ernest G. Bowman under the Tennessee Valley Authority Retirement System

---

1. This document was mistakenly date stamped by the clerk "August 22, 1988."

(TVARS). TVARS is a "Retirement System" established by Mr. Bowman's former employer, the Tennessee Valley Authority (TVA).[2] Mr. Bowman's benefits under various TVARS plans include: (1) his contributions to an "annuity savings account" in the amount of $19,932.52, which he withdrew postpetition upon termination of his employment; (2) a monthly pension benefit of $196.13 which commenced in August, 1989; and (3) $670.32 in a "401(k)"[3] plan.

The trustee initially opposed the debtors' exemption on grounds that "it [TVARS] may not qualify under any of the applicable sections of the Internal Revenue Code (ERISA)[4] referenced in such exemption statute." Alternatively, the trustee argued that under the authority of *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), ERISA preempts Tenn.Code Ann. § 26–2–104 (Supp.1989).[5]

At a hearing held December 27, 1989, the trustee acknowledged that the various plans embodied within TVARS are qualified plans under Internal Revenue Code § 401(a) (26 U.S.C.A. § 401(a) (West Supp.

1989)). Further, the trustee conceded that the plans encompassed within TVARS are "governmental plan[s]" not subject to the provisions of ERISA title I. Therefore, the trustee agrees that the TVARS plans are not subject to the preemptive effect of ERISA § 514(a).[6]

The trustee further contends, however, that subsection (b) of Tenn.Code Ann. § 26–2–104 (Supp.1989)[7] does not apply to retirement plans established or maintained by agencies or instrumentalities of the United States. This issue has been fully briefed by the trustee and TVARS.[8]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1989).

I

Tenn.Code Ann. § 26–2–104 (Supp.1989) provides:

> 26–2–104. State pension moneys, certain retirement plan funds or assets, exempt.—(a) All moneys received by a resident of the state, as pension from the state of Tennessee, or any subdivision or municipality thereof, before receipt, or

2. The debtors filed a joint petition under Chapter 7 of title 11 on June 6, 1989. Mr. Bowman's employment with TVA terminated effective June 16, 1989. He did not disclose his interest in TVARS until examination by the trustee at the meeting of creditors held pursuant to Bankruptcy Code § 341(a) on July 14, 1989.

3. The parties' use of the term "401(k)" presumably refers to Internal Revenue Code § 401(k) (26 U.S.C.A. § 401(k) (West Supp.1989)). The "401(k)" plan became a part of TVARS on February 14, 1986, under the provisions of a plan known as "The Tennessee Valley Authority Savings And Deferral Retirement Plan."

4. Employee Retirement Income Security Act of 1974.

5. In *Mackey* the Supreme Court held that a Georgia statute exempting an ERISA qualified employee welfare benefit plan from garnishment was preempted by ERISA.

6. Title I of ERISA, embodying its labor law provisions, is codified at title 29 of the United States Code. Title II of ERISA, codified in various sections of title 26 of the United States Code, contains amendments and additions to the Internal Revenue Code essential to the establishment of a plan as a qualified plan. The tax qualifying provisions of ERISA title II are

not within the preemptive scope of ERISA § 514(a) (29 U.S.C.A. § 1144(a) (West 1985)), which provides in material part:

> [T]he provisions of this subchapter [ERISA title I] and subchapter III [ERISA title IV] of this chapter shall supersede any and all State laws insofar as they ... relate to any employee benefit plan described in section 1003(a) of this title....

ERISA § 4 (29 U.S.C.A. § 1003 (West 1985)), provides in material part:

> (a) Except as provided in subsection (b) of this section ... this subchapter [ERISA title I] shall apply to any employee benefit plan....
> (b) The provisions of this subchapter shall not apply to any employee benefit plan if—
>   (1) such plan is a governmental plan (as defined in section 1002(32) of this title)....

The trustee now acknowledges that TVARS is a "governmental plan" as defined at 29 U.S.C.A. § 1002(32) (West Supp.1989).

7. In their "Amendment To Exemptions" the debtors claim their exemption generally under Tenn.Code Ann. § 26–2–104 (Supp.1989). Clearly, it is subsection (b) of the statute upon which the debtors rely.

8. TVARS was permitted to intervene in this contested proceeding by an order entered November 18, 1989.

while in his hands or upon deposit in the bank, shall be exempt from execution, attachment or garnishment other than an order for assignment of support issued under § 36–5–501, whether such pensioner is the head of a family or not.

(b) Except as provided in subsection (c), any funds or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under §§ 401(a), 403(a), 403(b), and 408 of the federal Internal Revenue Code of 1986, as amended,[9] are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee. All records of the debtor concerning such plan and of the plan concerning the debtor's participation in the plan, or interest in the plan, are exempt from the subpoena process.

(c) Any plan or arrangement described in subsection (b), except a public plan under subsection (a), is not exempt from the claims of an alternate payee under a qualified domestic relations order. However, the interest of any and all alternate payees under a qualified domestic relations order are exempt from any and all claims of any creditor, other than the state of Tennessee. As used in this subsection, "alternate payee" and "qualified domestic relations order" have the meaning ascribed to them in § 414(p) of the federal Internal Revenue Code of 1986, as amended.

The trustee contends that subsection (b) of the Tennessee statute "does not apply to 'public plans' including United States' plans." *Trustee's Brief In Support Of His Objection To Debtors' Amended Claim Of Exemption And In Opposition To Tennessee Valley Authority Retirement Systems' Motion To Intervene And Response,* at p. 11. He argues that the legislative history to the statute evidences a legislative intent to exclude "United States' plans." *Id.*

## II

The trustee's reliance on legislative history to contradict or expand what this court perceives to be the clear language of Tenn.Code Ann. § 26–2–104(b) (Supp.1989) is precluded by rules of statutory construction applied by the courts of Tennessee. "[N]o intent may be imputed to the legislature in the enactment of a statute other than such as is supported by the face of the statute itself." *Madison Loan & Thrift Co. v. Neff,* 648 S.W.2d 655, 657 (Tenn.Ct.App.1982). *See Brewer v. Exxon Corp.,* 626 F.Supp. 76, 80 (E.D. Tenn.1985) ("In interpreting [a] statute, the Court is bound by the plain terms of the statute if they provide guidance to the resolutions of the issues before the Court. The language of the statute is conclusive if the terms are clear and applicable." (citations omitted)); *Memphis Publishing Co. v. Holt,* 710 S.W.2d 513 (Tenn.1986); *Austin v. Memphis Publishing Co.,* 655 S.W.2d 146, 148–49 (Tenn.1983). The Tennessee Supreme Court in *Austin* stated the rule as follows:

[T]he most basic and fundamental rule of statutory construction ... has been expressed in many ways over the years but has always conveyed the principle that the courts are restricted to the natural and ordinary meaning of the language used by the Legislature within the four corners of the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent.

In one of the earliest expressions of the rule, the Court in *Miller v. Childress,* 21 Tenn. 319, 321–22 (1841) said:

"Where a statute is plain and explicit in its meaning, and its enactment within the legislative competency, the duty of the courts is simple and obvious,

---

9. Provisions of the Internal Revenue Code as referred to in subsection (b) are improperly joined in the conjunctive rather than the disjunctive. The statute will be construed in accordance with the obvious intention of the drafters—Internal Revenue Code §§ 401(a), 403(a), 403(b) and 408 shall be deemed joined in the disjunctive rather than the conjunctive. Therefore, each section stands independent of the other. *In re Martin,* 102 B.R. 639, 645–46 (Bankr.E.D.Tenn.1989).

namely, to say *sic lex scripta*, and obey it."

. . . .

Justice Cooper, writing for this Court in *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 ([Tenn.]1977), expressed the rule as follows:

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. This legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language."

. . . .

The rule discussed above prohibits the courts from resorting to outside sources to determine legislative intent.

655 S.W.2d at 148–49 (citations omitted).

Tenn.Code Ann. § 26–2–104(b) (Supp. 1989) is devoid of any ambiguity as to its application.[10] The Legislature clearly stated that certain retirement plans qualified under designated sections of the Internal Revenue Code are exempt from claims of creditors, except the state of Tennessee.[11] The statute contains no language limiting the application of subsection (b) exclusively to "private sector" retirement plans, as is argued by the trustee. By its terms, subsection (b) also extends to qualified "retirement plan[s]" established by instrumentalities or agencies of the United States.

The court concludes that Tenn.Code Ann. § 26–2–104(b) (Supp.1989) applies to any "retirement plan," public or private, qualified under the designated sections of the Internal Revenue Code. Thus, the statute has application to the TVARS plans in which the debtors claim an exemption.

This Memorandum in no way purports to address the pre-emptive effect of ERISA § 514(a) (29 U.S.C.A. § 1144(a) (West 1985)) as it relates to an exemption claimed by a debtor under Tenn.Code Ann.

§ 26–2–104(b) (Supp.1989) to an interest in a qualified "retirement plan" subject to the provisions of title I of ERISA. *See supra* note 6.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order will be entered denying the trustee's objection.

---

**10.** *See supra* note 9.

**11.** Subsection (c) of the statute imposes an additional exception relative to qualified domestic relations orders.