**In re Patrick F. MESSING, Nora B. Messing, Debtors.**

**No. 3–89–01961.**

United States Bankruptcy Court, E.D. Tennessee.

May 14, 1990.

Mostoller & Stulberg, Ann Mostoller, Oak Ridge, Tenn., for trustee.

Stone & Hinds, P.C., George F. Legg, Knoxville, Tenn., for debtors.

## MEMORANDUM ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION IN ERISA–QUALIFIED PENSION BENEFIT PLAN

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The debtor, Patrick F. Messing, claims an exemption in the amount of $6,365.45 in an ERISA [1]-qualified pension benefit plan established by his employer.[2] The exemption is claimed under Tennessee law pursuant to Tenn.Code Ann. § 26–2–104(b) (Supp. 1989). Alternatively, the debtor claims the exemption under 11 U.S.C.A. § 522(b)(2)(A) (West 1979 & Supp.1990). The trustee, Ann Mostoller, objects to the debtor's exemption, contending that Tenn.Code Ann. § 26–2–104(b) (Supp.1989) is preempted by ERISA and that the debtor is not entitled to claim an exemption in an ERISA-qualified pension benefit plan under the "other Federal law" rubric of Bankruptcy Code § 522(b)(2)(A). All facts essential to a resolution of the issues before the court are embodied within written "Stipulations" filed February 7, 1990.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1990).

---

**1.** Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 829 (codified at 29 U.S.C.A. §§ 1001, *et seq.* (West 1985 & Supp.1990) and in various provisions of the Internal Revenue Code).

**2.** All references to "the debtor" throughout this Memorandum shall be to Patrick F. Messing.

**3.** "Stipulations" material to the issues in dispute are synopsized rather than quoted verbatim.

## I

The debtor and trustee stipulate the following material facts:[3]

1. The debtor is a beneficiary of a pension benefit plan (Plan) established by his employer under § 401(k) of the Internal Revenue Code (IRC) (26 U.S.C.A. § 401(k) (West Supp.1990)).

2. The Plan is an ERISA-qualified plan, qualifying under IRC § 401(a) (26 U.S.C.A. § 401(a) (West Supp.1990)).

3. The Plan contains the anti-assignment and anti-alienation provisions required by ERISA § 206(d) (29 U.S.C.A. § 1056(d) (West Supp.1990)) and IRC § 401(a)(13) (26 U.S.C.A. § 401(a)(13) (West Supp.1990)).

4. The debtor's interest in the Plan on July 12, 1989, the date he and his wife filed their joint petition under Chapter 7, was $6,365.45.

5. On the date his bankruptcy petition was filed, the debtor was thirty-one years old, employed by J.B.F. Associates, Inc., was not receiving benefits under the Plan, and had never made or received any withdrawals or distribution from the Plan.

## II

### PREEMPTION OF TENN.CODE ANN. § 26–2–104(b) (Supp.1989) BY ERISA

The Tennessee exemption statute relied upon by the debtor, Tenn.Code Ann. § 26–2–104(b) (Supp.1989), provides in material part:[4]

(b) Except as provided in subsection (c), any funds or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary

---

**4.** Subsection (a) of this statute provides an exemption for state pension moneys. Subsection (c), in a manner consistent with ERISA § 206(d) and IRC § 401(a)(13), provides that "[a]ny plan ... described in subsection (b) ... is not exempt from the claims of an alternate payee under a qualified domestic relations order."

in, a retirement plan which is qualified under §§ 401(a), 403(a), 403(b), and 408 of the federal Internal Revenue Code of 1986, as amended,[5] are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee....

This court, adhering to the United States Supreme Court's decision in *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), has previously held that Tenn. Code Ann. § 26–2–111(1)(D) (1980),[6] which also provides for an exemption in ERISA-qualified pension and profit sharing plans, "relates to" ERISA and is therefore preempted by ERISA. *In re Sellers*, 107 B.R. 152 (Bankr.E.D.Tenn.1989). Tenn. Code Ann. § 26–2–104(b) (Supp.1989) "relates to" ERISA and for the reasons discussed by the court in *Sellers*, must also fall to ERISA's preemption provisions.

The Supreme Court in *Mackey* held that a Georgia statute exempting ERISA-qualified welfare benefit plans from garnishment was preempted by ERISA. The Court struck down the Georgia statute on the strength of ERISA § 514(a) (29 U.S.C.A. § 1144(a) (West 1985)), which provides in material part:

**(a) Supersedure; effective date**

Except as provided in subsection (b) of this section, the provisions of this subchapter [ERISA title I] [7] and subchapter III [ERISA title IV] of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [8] described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

The Court, in its discussion of ERISA § 514(a) and its effect on the Georgia statute under consideration, stated:

ERISA § 514(a) pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute....

The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans.... "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with *or reference to* such a plan." On several occasions ... we have reaffirmed this rule, concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). In fact, we have virtually taken it for granted that state laws

---

**5.** Provisions of the Internal Revenue Code as referred to in subsection (b) are improperly joined in the conjunctive rather than the disjunctive. The statute will be construed in accordance with the obvious intention of the drafters—§§ 401(a), 403(a), 403(b) and 408 shall be deemed joined in the disjunctive rather than the conjunctive. Therefore, each section stands independent of the other. *In re Martin*, 102 B.R. 639, 645–46 (Bankr.E.D.Tenn.1989).

**6.** Tenn.Code Ann. § 26–2–111 (1980) provides in material part:

[T]he following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

(1) The debtor's right to receive:

. . . . .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:

(i) Such plan or contract was established by or under the auspices of an insider that em-

ployed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service; and

(iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409). Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive *payment in a lump sum or in periodic payments over a period of sixty (60) months or less.*

**7.** *See infra* note 10.

**8.** ERISA § 3(3) (29 U.S.C.A. § 1002(3) (West Supp.1990)) defines "employee benefit plan" to mean "an employee welfare benefit plan or an employee pension benefit plan...."

which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a). (emphasis in original). "The pre-emption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, *even including state laws that are consistent with ERISA's substantive requirements.*" ... Legislative "good intentions" do not save a state law within the broad pre-emptive scope of § 514(a). (emphasis added).

108 S.Ct. at 2185 (citations omitted).

Bankruptcy Judge Leif M. Clark has observed that "[i]t is simply not possible to evade the clear mandate [of *Mackey*] that a law which 'makes reference to' an ERISA plan faces pre-emption under Section 514(a)." *In re Komet,* 104 B.R. 799, 801 (Bankr.W.D.Tex.1989). Tenn.Code Ann. § 26–2–104(b) (Supp.1989) "makes reference to" an ERISA plan. The ability of a plan "participant or beneficiary" to rely upon the Tennessee statute in dispute is dependent upon whether the plan is qualified under IRC §§ 401(a), 403(a), 403(b), or 408. IRC § 401(a) refers to ERISA-qualified pension, profit-sharing and stock bonus plans; IRC §§ 403(a) and (b) (26 U.S.C.A. § 403(a) & (b) (West Supp.1990)) refer to ERISA-qualified annuities; and IRC

§ 408 (26 U.S.C.A. § 408 (West Supp.1990)) refers to individual retirement accounts.[9]

The major qualification issue raised in IRC §§ 401(a) and 403(a) and (b) is whether the plan comports with the labor law provisions of ERISA title I.[10] A stock bonus, pension or profit sharing plan which does not comply with the labor law provisions of ERISA title I cannot be a qualified plan under IRC § 401(a).[11] Thus, the reference in Tenn.Code Ann. § 26–2–104(b) (Supp. 1989) to "a retirement plan which is qualified under ... § 401(a)" incorporates and thus "relates to" ERISA title I. *See In re Komet,* 93 B.R. 498, 500 (Bankr.W.D.Tex. 1988).

The Tennessee exemption statute in dispute seeks to exempt the interest of a beneficiary in a qualified retirement plan from "all claims of creditors ... *except the state of Tennessee.*" (emphasis added). ERISA § 206(d) (29 U.S.C.A. § 1056(d) (West Supp.1990)), embodied within the provisions of ERISA title I, provides at paragraph (1) that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The Tennessee statute, by providing an exemption from all claims of creditors "ex-

**9.** Three types of individual retirement accounts are defined under IRC § 408(a), (b), and (c). This court has held that individual retirement accounts under IRC § 408(a) do not originate under title I of ERISA and are, therefore, outside the preemptive scope of ERISA § 514(a). *In re Martin,* 102 B.R. 639 (Bankr.E.D.Tenn. 1989). Whether or not individual retirement accounts established under IRC § 408(b) and/or (c) are also outside the preemptive scope of ERISA § 514(a) is not germane to the issues the court is called upon to address within the context of this Memorandum.

**10.** Title I of ERISA, codified as Subchapter I of title 29 of the United States Code (29 U.S.C.A. §§ 1001 to 1168 (West 1985 & Supp.1990)), embodies the labor law provisions of ERISA governing, inter alia, reporting and disclosure requirements, participation and vesting, funding, fiduciary responsibility, and administration and enforcement. Title II of ERISA, codified at various sections of title 26 of the United States Code, deals with amendments or additions to the Internal Revenue Code which impose requirements a plan must meet in order to provide the tax advantages and benefits of a qualified plan. The provisions of title II of ERISA

are not embodied within the preemptive scope of ERISA § 514(a), quoted *supra* at p. 6.

**11.** However, ERISA § 4(b) (29 U.S.C.A. § 1003(b) (West 1985)) exempts the following employee benefit plans from coverage under ERISA title I: governmental plans; church plans for which no election has been made under IRC § 410(d); plans maintained solely for the purpose of complying with workmen's compensation laws, unemployment compensation laws, or disability insurance laws; plans maintained outside the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; and unfunded plans maintained by employers primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. *See In re Bowman,* 109 B.R. 789 (Bankr.E.D.Tenn.1990) (Retirement plans embodied within Tennessee Valley Authority Retirement system, although qualified plans under IRC § 401(a), are "governmental plan[s]" not subject to the provisions of ERISA title I. Such plans are, therefore, not subject to the preemptive effect of ERISA § 514(a) and benefits therefrom are exempt under Tenn.Code Ann. § 26–2–104(b) (Supp.1989)).

cept the state of Tennessee," purports to regulate ERISA-qualified pension benefit plans in a manner in derogation of ERISA § 206(d)(1). "The preemption provision ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185, 100 L.Ed.2d at 844, *citing Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Tenn.Code Ann. § 26–2–104(b) (Supp.1989) cannot even lend itself to the argument, albeit rejected by *Mackey*, that the statutory reference to ERISA is consistent with the purposes of ERISA. The statute, in its application to ERISA-qualified pension benefit plans, is clearly inconsistent with ERISA § 206(d)(1).

Tenn.Code Ann. § 26–2–104(b) (Supp. 1989) allows the debtor to exempt his interest in the Plan only if the Plan is qualified under IRC §§ 401(a), 403(a), 403(b), or 408. The parties stipulate that the Plan is qualified under IRC § 401(a). Based on the Supreme Court's decision in *Mackey*, Tenn. Code Ann. § 26–2–104(b) (Supp.1989) is preempted by ERISA to the extent the statute purports to allow an exemption in an ERISA title I "retirement plan" qualified under IRC § 401(a). Accordingly, the debtor may not rely on the Tennessee statute to exempt his interest in the plan in dispute in this contested proceeding. Other courts have held in a consistent manner. *See, e.g., Deposit Guaranty Nat'l Bank v. McLeod (In re McLeod)*, 102 B.R. 60 (Bankr.S.D.Miss.1989) (Mississippi statute exempting ERISA-qualified retirement fund from seizure preempted by ERISA); *Penick v. Hirsch (In re Hirsch)*, 98 B.R. 1 (Bankr.D.Ariz.1988) (Arizona statute exempting ERISA-qualified pension plans from execution preempted by ERISA); *In*

*re Brown*, 95 B.R. 216 (Bankr.N.D.Okla. 1989) (Oklahoma statute exempting ERISA-qualified pension plans preempted by ERISA). *Contra, In re Volpe*, 100 B.R. 840 (Bankr.W.D.Tex.1989) (Texas statute exempting ERISA-qualified benefit plans not preempted by ERISA).

For the reasons set forth above, the trustee's objection to the debtor's claim of an exemption under Tenn.Code Ann. § 26–2–104(b) (Supp.1989) is sustained. The debtor's exemption under the Tennessee statute will be disallowed.

### III
### EXEMPTION UNDER CODE § 522(b)(2)(A)

Bankruptcy Code § 522(b)(2)(A) provides in material part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

. . . .

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section,[12] or State or local law that is applicable on the date of the filing of the petition....

11 U.S.C.A. § 522(b)(2)(A) (West 1979 & Supp.1990).

The debtor contends that since the Plan is a qualified plan containing the requisite anti-alienation and anti-assignment provisions mandated by ERISA § 206(d)(1) and IRC § 401(a)(13), the Plan is exempt under the "other Federal law" rubric of § 522(b)(2)(A).[13]

A review of the reported decisions dealing with this question indicates that few courts agree with the debtor's position. *In*

---

**12.** Tennessee opted out of the federal scheme of exemptions in 1980. Tenn.Code Ann. § 26–2–112 (1980).

**13.** ERISA § 206(d)(1) is quoted *supra* at p. 9. IRC § 401(a)(13) provides in material part at subparagraph (A) that "a trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides

that benefits provided under the plan may not be assigned or alienated...." ERISA § 206(d) and IRC § 401(a)(13) do, however, permit the alienation of benefits under provisions of a "qualified domestic relations order." *See* ERISA § 206(d)(3) (29 U.S.C.A. § 1056(d)(3) (West Supp.1990)) and IRC § 401(a)(13)(B) (26 U.S.C.A. § 401(a)(13)(B) (West Supp.1990)).

re Burns, 108 B.R. 308 (Bankr.W.D.Okla. 1989); In re Komet, 104 B.R. 799 (Bankr. W.D.Tex.1989); In re Hinshaw, 23 B.R. 233 (Bankr.D.Kan.1982). The majority of courts, including United States Courts of Appeals for the Fifth, Eighth, Ninth, and Eleventh Circuits, have concluded that ERISA § 206(d) does not establish a "Federal law" exemption for ERISA-qualified plans cognizable under § 522(b)(2)(A).[14]

This court is persuaded that the language of § 522(b)(2)(A) is sufficiently broad to include an ERISA-qualified plan as "property that is exempt under Federal law."

The legislative history on § 522(b) provides in material part:

Subsection (b), the operative subsection of this section, is a significant departure from present law. It permits an individual debtor in a bankruptcy case a choice between exemption systems. The debtor may choose the Federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile. If the debtor chooses the latter, some of the items that may be exempted under other Federal laws include:

—Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;

—Social security payments, 42 U.S.C. 407;

—Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717;

—Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;

—Civil service retirement benefits, 5 U.S.C. 729, 2265;

—Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;

—Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(1);

—Veterans benefits, 45 U.S.C. 352(E);

—Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and

—Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 75 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5861, 6316.

The Eighth Circuit has determined that ERISA is not "Federal law" upon which an exemption may be based under § 522(b)(2)(A). In discussing the illustrative list of property which might be exempted under "other Federal law" as set forth in the House and Senate Reports, the court stated that the "list was not meant to be exclusive" but found "the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a 'Federal law' upon which a § 522(b)(2)(A) exemption could be based." Samore v. Graham (In re Graham), 726 F.2d 1268, 1274 (8th Cir.1984).

The Fifth Circuit in Goff v. Taylor (Matter of Goff), 706 F.2d 574 (5th Cir.1983), a case relied upon by the Eighth Circuit in reaching its conclusion in Graham, also concluded that ERISA plans do not qualify for exemption under § 522(b)(2)(A). The Goff court stated:

Congress did not "overlook" ERISA. Given the extensive and general reach of ERISA-qualified plans, it is highly improbable that Congress intended their inclusion without mention in the Section 522(b)(2)(A) exemption in the midst of a listing [in the legislative history] of significantly less comprehensive and less well known statutes....

We do not see across-the-board differences in the explicitness of the restraints against alienation in the listed statutes and in ERISA. But we do find that the contingent nature of ERISA's restraints

---

**14.** Recent noncircuit level cases concluding that ERISA § 206(d) does not establish a federal nonbankruptcy exemption include In re Conroy, 110 B.R. 492 (Bankr.D.Mont.1990); In re Alagna, 107 B.R. 301 (Bankr.D.Colo.1989); In re Toner, 105 B.R. 978 (Bankr.D.Colo.1989); Heit-

kamp v. Dyke (In re Dyke), 99 B.R. 343 (Bankr.S. D.Tex.1989); In re Gribben, 84 B.R. 494 (Bankr. S.D.Ohio 1988); In re Slezak, 63 B.R. 625 (Bankr.W.D.Ky.1986); Gilbert v. Osburn (In re Osburn), 56 B.R. 867 (Bankr.S.D.Ohio 1986).

on alienation differs markedly from the absolute prohibitions contained in the listed statutes [in the legislative history]. *Id.* at 585.[15]

The Eleventh Circuit, following *Goff* and *Graham* in also holding that ERISA does not provide an exemption cognizable under § 522(b)(2)(A), stated:

The House and Senate reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws. ERISA-qualified pension plans are not included. Although Congress may not have intended the list to be exhaustive, the failure to include ERISA is nonetheless indicative of congressional intent. Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports.... The failure to mention ERISA in connection with § 522(b) was intentional....

The failure to mention ERISA in the legislative history accompanying § 522(b)(2)(A) is, therefore, both purposeful and reasoned.

*Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488, 1491 (11th Cir. 1985) (footnotes and citations omitted).

The Ninth Circuit has followed the decisions of the Fifth, Eighth, and Eleventh Circuits in *Goff, Graham,* and *Lichstrahl,* respectively. *Daniel v. Security Pacific Nat'l Bank (In re Daniel),* 771 F.2d 1352 (9th Cir.1985).

This court does not intend a detailed analysis of the four circuit level cases discussed above. The common thread running through each appears to be the reliance on legislative history as conclusive of a congressional intent that ERISA not be included as "other Federal law" embodied within § 522(b)(2)(A). To this court the clear language of § 522(b)(2)(A) belies such an interpretation. Further, it appears that the Supreme Court in *Mackey* has expressly characterized ERISA § 206(d)(1) as a federal exemption. The Court in *Mackey* observed:

Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans....

Section 206(d)(1) bars the assignment or alienation of pension plan *benefits,* and thus prohibits the use of state enforcement mechanisms only in so far as they prevent those benefits from being paid to plan participants.... [B]y contrast, [§ 514(a)] deals with State laws as they relate to *plans....* But by adopting § 206(d)(1), Congress demonstrated that it could, where it wished to, stay the operation of state law as it affects only benefits and not plans....

[W]hen Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans....

*Mackey,* 486 U.S. at 836, 837, 108 S.Ct. at 2188, 2189, 100 L.Ed.2d at 848, 849 (emphasis in original).

Although influenced by the decisions out of the Fifth, Eighth, Ninth, and Eleventh Circuits, this court is satisfied that ERISA § 206(d)(1) establishes a "Federal law" exemption cognizable under § 522(b)(2)(A). The court accordingly declines to follow the holdings in *Graham, Goff, Lichstrahl,* and *Daniel.* In reaching this conclusion, the court is guided by decisions of the United States Court of Appeals for the Sixth Circuit.

The Sixth Circuit, by virtue of the preemption provision of ERISA § 514(a), has held that the anti-assignment and anti-

---

**15.** Bankruptcy Judge Clark in *Komet* vigorously disagreed with the holding in *Goff* and concluded that ERISA § 206(d) is "other Federal law" within the purview of § 522(b)(2)(A). 104 B.R.

799. Judge Clark's opinion in *Komet* contains an extensive discussion and analysis in support of his conclusion that the Fifth Circuit's holding in *Goff* is incorrect. *Id.* at 808–16.

alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13) overrides the operation of state law garnishment statutes. *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980). The court in *Buha,* in a broad discussion of ERISA, states in material part:

ERISA was enacted, in part at least, to provide a uniform and systematic framework for regulation of employee benefit plans. It contains a provision for preemption of state laws.... Congress sought to establish minimum standards to assure "the equitable character of such plans and their financial soundness" in enacting ERISA. It is central to the statutory scheme that ERISA not be subject to state and local laws which might frustrate its goals. This was emphasized by Representative Dent, Chairman of the Subcommittee on Labor of the House Committee on Education and Labor, who stated:

Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent state and local regulation. 120 Cong. Rec. 29197 (1974).

. . . .

Garnishment is not mentioned in ERISA. However, both ERISA and the section of the Internal Revenue Code (IRC) dealing with "qualified" pension, profit-sharing and stock bonus plans contain provisions against assignment or alienation of plan benefits. Nearly identical language in 29 U.S.C. § 1056(d)(1) (ERISA [§ 206(d)(1)]) and 26 U.S.C. § 401(a)(13) (IRC) requires plans to contain a provision that "benefits provided under the plan may not be assigned or alienated."

. . . .

The defendants contend that use of the words "assignment" and "alienation" in § 1056(d)(1) indicates that Congress intended to prohibit only voluntary acts by the pension plan beneficiaries. They point out that Congress has clearly prohibited garnishments and attachments when that is its intention. They list ten different statutes in which Congress has made a distinction between voluntary assignments and involuntary encroachments on benefits by way of garnishment, execution, attachment, etc. This is a strong indication that Congress recognized the difference between voluntary and involuntary encroachments on benefit funds and has stated it specifically when both are forbidden. Nevertheless, Congress did use the word "voluntary" in specifying those assignments which qualify for the 10 per cent exception in § 1056(d)(2). This can reasonably be read as an indication that the preceding language in § 1056(d)(1) included all encroachments, both voluntary and involuntary.

. . . .

The Act [ERISA] provides for a division of authority in the issuance of regulations:

(c) Extended application of regulations prescribed by Secretary of Treasury relating to minimum participation standards, minimum vesting standards, and minimum funding standards.

Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter. Except as otherwise expressly provided in this chapter, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sec-

tions 410(a), 411 and 412 of Title 26. 29 U.S.C. § 1202(c).

....

Pursuant to this authority the Secretary of the Treasury issued Internal Revenue Service Regulation § 1.401(a)–13, which provides in part:

(b) *No assignment or alienation.—* (1) *General rule.* Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process. 26 C.F.R. § 1.401(a)–13 (1979).

Moreover, Congress provided that regulations issued by the Treasury Department would apply to analogous employee benefit sections of Title I of the Act in the same areas. Since the regulation in question is a legislative rather than an interpretive regulation, it is required to be followed unless it was issued in excess of the statutory authority of the Secretary or was "arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." The regulation in question clearly passes this test.

Giving the required effect to Reg. § 1.401(a)–13, *we conclude that pension plan benefits are not subject to garnishment....* (emphasis added).

*Id.* at 459–63 (citations and footnotes omitted).

More recently, the Sixth Circuit, in refusing to establish an implied exception to the anti-alienation provisions of ERISA § 206(d)(1) and IRC § 401(a)(13) based upon fraud, stated:

[A] fundamental purpose of ERISA [is] to insure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit ... he actually receives it."

[W]hether an exception should be created is a question for legislative rather than judicial judgment. Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied....

*United Metal Products Corp. v. National Bank of Detroit,* 811 F.2d 297, 300 (6th Cir.1987) (citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402, 408 (1981); *United States v. Rutherford,* 442 U.S. 544, 559, 99 S.Ct. 2470, 2479, 61 L.Ed.2d 68, 81 (1979)).

In construing § 522(b)(2)(A), this court must consider that "[i]t is an elementary rule of statutory construction that [courts] ... initially look to the plain language of the statute to determine the meaning of legislation." *McBarron v. S & T Industries, Inc.,* 771 F.2d 94, 97 (6th Cir.1985). *See Powell v. Tucson Air Museum Foundation of Pima County,* 771 F.2d 1309, 1311 (9th Cir.1985) (when interpreting a statute, the plain meaning of the words used is controlling in the absence of a clearly expressed legislative intent to the contrary). The Sixth Circuit has observed:

The primary function of the courts in construing legislation is to effectuate the legislative intent. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Legislative intent may be ascertained from the clear language of the statute itself or from available legislative materials which clearly reveal this intent. Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, analyzing the provision in context with the whole....

*Ray v. Security Mutual Finance Corp. (In re Arnett),* 731 F.2d 358, 360–61 (6th Cir.1984). The Sixth Circuit has also stated:

Our ... task in determining the scope of [a] ... statute is to examine its language. We note that "[i]f the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent

to the contrary, that language must ordinarily be regarded as conclusive.' " *United States v. Premises Known as 8584 Old Brownsville Rd.*, 736 F.2d 1129, 1130 (6th Cir.1984) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252 (1981)). *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)").

This court is satisfied that ERISA § 206(d)(1) establishes a "Federal law" exemption in an ERISA-qualified pension benefit plan available to a debtor who elects to claim his exemptions under § 522(b)(2)(A). The Supreme Court's decision in *Mackey* as well as the decisions of the Sixth Circuit in *Buha* and *United Metal Products*, by which this court is bound, mandate this conclusion. Further, the clear and unambiguous language of § 522(b)(2)(A) prohibits this court from reading the illustrative list of "other Federal law" in the legislative history to § 522(b)(2)(A) as anything more than it purports to be—a nonexclusive list indicative of what might qualify as "other Federal law" cognizable under § 522(b)(2)(A).

Judge Clark in concluding that Congress expressed no particular intent to limit a debtor's access to retirement benefits in § 522(b), stated:

> The overall structure of Section 522(b) manifests a congressional policy which generally *favors* debtors retaining their retirement benefits. The legislative history is effusive in according sufficient property to debtors for their fresh start.... [M]ost persuasively, the substantial reenactment of Section 6 of the Act in Section 522(b)(2)(A) indicates that Congress there also intended to continue prior law, which simply incorporated by reference such federal exemptions as might otherwise be available to the debt-

or absent bankruptcy. Under prior law, those statutes controlled the nature and extent of the exemption. The same rule of construction should also apply to Section 522(b)(2)(A).

> As Section 522(b)(2)(A) contemplates honoring existing exemptions available under "other federal law," ... this court [is compelled] to honor as exempt the benefits accruing from ERISA-regulated plans which are in compliance with ERISA § 206(d)(1).

> ....

> [A]s discussed above, Section 6 of the Bankruptcy Act (from which ... [§ 522(b)] of the Code was taken) deferred to nonbankruptcy exemption statutes with respect to the nature and extent of the exemptions a debtor could claim upon bankruptcy. Nothing in that section even vaguely suggested an intention to modify or limit the scope or operation of a given exemption in the bankruptcy context. Had Congress intended to depart from prior law, it would have had to have done so by choosing explicit *statutory* language. It is dangerous to rely upon illustrative lists in the legislative history to *add* such a limitation to the statute. *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124, 143 (1977); *Scripps–Howard Radio v. FCC*, 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229, 1235 (1942).

*In re Komet*, 104 B.R. at 813–14 (emphasis in original) (footnote omitted).

## IV

## CONCLUSION

ERISA § 206(d)(1) and IRC § 401(a)(13) permit the debtor to claim as exempt under § 522(b)(2)(A) his interest in the ERISA-qualified § 401(k) Plan established by his employer. The trustee's objection to the debtor's claim of an exemption under § 522(b)(2)(A) will, accordingly, be denied.

This Memorandum constitutes findings of fact and conclusions of law as required

by Fed.R.Bankr.P. 7052. An appropriate order will be entered.