OPINION
{¶ 1} Appellant Loretta Pack, Trustee of the Maebelle W. Osborn Trust ("Appellant"), appeals the decision of the Licking County Court of Common Pleas that granted Appellee Licking County Department of Job and Family Services' ("LCDJFS") cross-motion for summary judgment and denied appellant's motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} This case involves the right of Charlotte Osborn to receive Medicaid benefits and other services. Charlotte is a sixty-one year old woman who is physically and mentally disabled. Charlotte resides with her brother and sister-in-law. They have been providing in-home care for her since the death of her mother, Maebelle Osborn, in December 1991.
 {¶ 3} During the past few years, Charlotte has experienced physical setbacks that have required three short-term rehabilitation stays in a nursing home. Charlotte does not presently receive services or medical benefits from LCDJFS. However, these health and support services are needed, for Charlotte, to maintain her present living arrangement. Charlotte will likely require Medicaid health care benefits, from LCDJFS, for the remainder of her life.
 {¶ 4} On May 7, 2004, Charlotte applied for Medicaid and Home Community Based Services. LCDJFS determined that Charlotte was not eligible for Medicaid benefits and services because of her beneficiary interest in the Osborn Trust, which has a corpus of approximately $265,000.00. On this same date, appellant filed a civil complaint, for declaratory judgment, and in the alternative, reformation of the Osborn Trust. Three days after filing the complaint, the trial court appointed a guardian ad litem for Charlotte Osborn. The trial court conducted a pretrial and referred this matter to a magistrate. On October 12, 2004, appellant filed a motion for summary judgment. LCDJFS responded to appellant's motion for summary judgment and filed a cross-motion for summary judgment.
 {¶ 5} On December 17, 2004, the magistrate issued his decision granting LCDFS' motion for cross-summary judgment and denying appellant's motion for summary judgment. Pursuant to Civ.R. 52, appellant requested the magistrate to issue separate findings of fact and conclusions of law. The magistrate filed an amended decision, on January 19, 2005, containing conclusions of law.
 {¶ 6} In its amended decision, the magistrate made the following findings:
 {¶ 7} "I. The Licking County Department of Job and Family Services correctly determined that the Trust is a countable resource for purposes of determining Medicaid eligibility because it correctly disregarded the discretionary clause contained in the Maebelle W. Osborn Trust, per the Ohio Revised Code and the Administrative Code.
 {¶ 8} "II. The Trustee of the Maebelle W. Osborn Trust can be compelled to invade the trust principal for the medical care and proper maintenance of Charlotte Osborn as she has an ownership interest in the Trust which she can access through the courts.
 {¶ 9} "III. The Young and Carnahan decisions are rendered moot by the amendments to Ohio Administrative Code Section5101:1-39-27.1 and the enactment of Ohio Revised Code Section5111.151.
 {¶ 10} "IV. The Maebelle W. Osborn Trust cannot be reformed because the intent of the settlor cannot be ascertained within the bounds of law." Amended Magistrate's Decision with Findings of Fact and Conclusions of Law, Jan. 19, 2005, at 2-4.
 {¶ 11} Thereafter, appellant filed objections to the magistrate's decision. On June 16, 2005, the trial court affirmed the magistrate's decision finding the Osborn Trust is required to be counted as an available resource in accordance with R.C.5111.151(G)(2). The trial court also found that R.C.5111.151(G)(4)(a) does not apply to the Osborn Trust because the trust does not require that any portion of the trust or any part of the income and principal be set aside for other beneficiaries or remaindermen. Judgment Entry, June 16, 2005, at 1. The trial court filed a judgment entry nunc pro tunc on June 30, 2005, reaching the same conclusion.
 {¶ 12} Appellant timely filed a notice of appeal and sets forth the following sole assignment of error for our consideration:
 {¶ 13} "I. THE LOWER COURT ERRED, AS A MATTER OF LAW, BY DENYING APPELLANT TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING APPELLEE LCDJFS' CROSS-MOTION FOR SUMMARY JUDGMENT, IN ITS ENTIRETY."
 Summary Judgment Standard {¶ 14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 15} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 16} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, citing Dresher v. Burt, (1996),75 Ohio St.3d 280. It is based upon this standard that we review appellant's sole assignment of error.
 I {¶ 17} Appellant maintains the trial court erred when it granted the cross-motion for summary judgment filed by the LCDJFS and denied her motion for summary judgment. We agree.
 {¶ 18} Maebelle Osborn executed the trust at issue on October 7, 1987, and subsequently died on December 27, 1991. Between the date of the execution of the trust and the date of Charlotte's application for Medicaid benefits, Ohio's Medicaid regulations concerning trust beneficiaries changed eight times.[1]
 {¶ 19} The language of the trust at issue in the case sub judice provides as follows:
 {¶ 20} "2. Dispositive Provisions:
"* * *
 "Income and Principal {¶ 21} "(a) The Trustee may, until the death of her daughter CHARLOTTE OSBORN, distribute to or expend for the benefit of MAEBELLE W. OSBORN, CHARLOTTE OSBORN, ARTHUR ELWOOD OSBORN and LORETTA PACK so much of the principal and the current accumulated income therefrom, at such time or times and in such amounts and manner as the Trustee, in her sole discretion, shall determine. Any amounts of income which the Trustee shall determine not to distribute to or to expend for the benefit of MAEBELLE W. OSBORN, CHARLOTTE OSBORN, ARTHUR ELWOOD OSBORN and LORTETTA PACK may be accumulated.
 {¶ 22} "In making such distribution (sic) is my intent that my Trustee use income or principal for the benefit of my children only for purposes other than providing food, clothing or shelter that is to be used only to meet supplemental needs over and above those met by entitlement benefits." Trust Agreement, Oct. 7, 1987, at 2.
 {¶ 23} One aspect of an applicant's eligibility for Medicaid benefits and services concerns a person's available financial resources. In Ohio, a Medicaid recipient is limited to $1,500.00 in countable resources. See O.A.C. 5101:1-39-05(A)(9). An applicant's resources includes cash, personal property, and real property that the applicant can use to pay for his or her own support and maintenance, either because of an ownership interest in the property or because the applicant may legally access the property and convert it into cash. See O.A.C. 5101:1-39-05(A)(8).
 {¶ 24} In addressing the issues raised in this assignment of error, we find it is first necessary to determine the applicable law. Appellant maintains the applicable law is the law existing at the time of its creation, absent a contrary intent within the instrument itself. In support of this argument, appellant cites the Ohio Supreme Court's decision in Ohio Citizens Bank v.Mills (1989), 45 Ohio St.3d 153. In this case, the Court held as follows at paragraph two of the syllabus:
 {¶ 25} "Provisions of an inter vivos trust shall be governed by the law existing at the time of its creation, absent a contrary intent within the instrument itself."
 {¶ 26} LCDJFS disagrees and instead argues that because laws are presumed to operate prospectively, the rules in effect on the date of application for Medicaid benefits and services should apply. In support of its argument, LCDJFS cites the following two appellate court cases: Martin v. Ohio Dept. Human Serv. (1998),130 Ohio App.3d 512, and Metz v. Ohio Dept. Human Serv. (2001),145 Ohio App.3d 304.
 {¶ 27} Upon review of the cases cited by the parties, we find the Ohio Supreme Court's decision in the Ohio Citizens Bank
case dispositive of the issue concerning the applicable law to apply to the trust agreement. Although this decision was subsequently overruled by statute, the portion that was overruled concerned the "stranger to the adoption" rule. The statute did not effect paragraph two of the syllabus regarding the law to apply when reviewing provisions of an inter vivos trust. Thus, we conclude the Ohio Citizens Bank decision is the law in the State of Ohio in determining what version of the law to apply to the provisions of an inter vivos trust. Further, we note the cases cited by LCDJFS are appellate court decisions, from other districts, and are not binding on this Court.
 {¶ 28} Accordingly, having concluded that we must apply the law in effect at the time Maebelle Osborn executed the trust agreement, we must now determine what law was in effect on October 7, 1987. The history of O.A.C. 5101:1-39-05 establishes that the version of the code, in effect when Maebelle Osborn executed the trust agreement, was that dated June 10, 1985. The language in this version of O.A.C. 5101:1-39-05 is identical to the language the Ohio Supreme Court considered in Young v. OhioDept. of Human Serv., 76 Ohio St.3d 547, 1996-Ohio-70. Therefore, we find the Young decision pertinent to the resolution of this matter.
 {¶ 29} In Young, "[t]he issue to be decided * * * [was] whether a testamentary trust that expressly prohibits the trustee from making any distributions that would affect the beneficiary's Medicaid benefits constitutes a `countable resource' under the ODHS Medicaid regulatory scheme set out in Ohio Adm. Code Chapter 5101:1-39." Id. at 5475-48. Although the Young decision involves a testamentary trust, as opposed to an inter vivos trust, we find the Court's analysis applicable because it involved the interpretation of the same version of the Ohio Administrative Code.
 {¶ 30} We would note that in Young, the Court applied the regulatory language in effect at the time the litigation arose as opposed to the regulatory language in effect at the time of its creation. Id. at 551. We find this distinction is based upon the fact that an inter vivos trust is created during the lifetime of a settlor and becomes effective in his or her lifetime. Therefore, the law in effect, at the time of its creation, should be applied. However, a testamentary trust takes effect at the death of the settlor or testator. Thus, the law in effect at the time of the settlor/testator's death or at the time litigation arises should apply.
 {¶ 31} The dispositional language of the trust at issue in the Young case provided as follows:
 {¶ 32} "(1) The share to be held for Grantor's daughter JANET LEE YOUNG, shall be held, managed and distributed by the Trustee as follows: The Trustee shall pay such amounts of the net income and, if necessary, principal of this Trust as she deems necessary for the benefit of JANET LEE YOUNG, provided, however, that the Trustee shall not make any distributions of income or principal for the benefit of JANET LEE YOUNG which shall render her ineligible or cause a reduction in any benefit she may be entitled to receive, including, but not limited to, the following: institutional care provided by the State or Federal government, Social Security, Supplementary Security Income, Medicare, and Medicaid. * * * Distributions of income or principal to or for the benefit of JANET LEE YOUNG shall be made liberally and generously, but not for the purpose of providing for anything which could otherwise be provided for her by governmental or other assistance." Id. at 548-549.
 {¶ 33} The Ohio Supreme Court concluded the plain meaning of the above cited language was that the father intended to provide his daughter with a source of supplemental support that would not jeopardize her access to basic assistance from Medicaid. Id. at 551. The Court also found that under former O.A.C. 5101.1-39-05(8), a resource will not be counted unless the applicant has both a legal interest in the resource and the legal ability to use or dispose of the resource. Id. Because the daughter had no control over the distributions that the trustee decided to make for her benefit, she did not have the ability to use or dispose of the resource. Id. Thus, the trust did not meet the former requirements for accountability. Id.
 {¶ 34} Although the language in the case sub judice is not identical to the language addressed by the Court in Young, the language used results in the same conclusion. First, the distribution of the principal and accumulated income is left to the discretion of the trustee. Second, and most importantly, the distributions are not to be made so as to eliminate eligibility for Medicaid benefits and services. Based upon this, we find, as did the Court in Young, that the plain meaning of the restrictive language in the Maebelle Osborn Trust is intended to provide Charlotte with a source of supplemental support that would not jeopardize her access to basic assistance from Medicaid.
 {¶ 35} Appellant's sole assignment of error is sustained.
 {¶ 36} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby reversed.
By: Wise, P.J. Gwin, J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is reversed.
Costs assessed to Appellee LCDJFS.
[1] See O.A.C. 5101:1-39-27.1. This regulation was revised on the following dates: Oct. 1, 1989; Dec. 16, 1989; Oct. 1, 1991; Sept. 1, 1992; Feb. 1, 1995; Apr. 27, 1995; July 1, 1996; and Nov. 7, 2002.